**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUMANA INC.,<br><br>Plaintiff,<br><br>v.<br><br>MERCK & CO., INC., MERCK SHARP & DOHME CORP., SCHERING-PLOUGH CORP., SCHERING CORP., and GLENMARK PHARMACEUTICALS LTD.,<br><br>Defendants. | Case No. 2:23-cv-23023 (BRM) (LDW)<br><br>**OPINION** |
| MERCK & CO., INC., MERCK SHARP & DOHME CORP., SCHERING-PLOUGH CORP., and SCHERING CORP.,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORP., AMERISOURCEBERGEN CORP., and CENCORA, INC.,<br><br>Third-Party Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Third-Party Defendants AmerisourceBergen Drug Corporation, AmerisourceBergen Corporation, and Cencora, Inc. f/k/a AmerisourceBergen Corporation's (collectively, "Cencora") Motion to Dismiss Defendants/Third-Party Plaintiffs Merck & Co., Inc., Merck Sharp & Dohme Corp., Schering-Plough Corp., and Schering Corp.'s (collectively,

"Merck") Third-Party Complaint (ECF No. 68) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, alternatively, to Transfer Venue to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) (the "Motion") (ECF Nos. 83, 84, 85). Merck filed an Opposition (ECF Nos. 86, 87), and Cencora filed a Reply (ECF Nos. 95, 96). Both parties subsequently filed Notices of Supplemental Authority[1] (ECF Nos. 116, 117, 144), and Cencora filed a response to Merck's Notice of Supplemental Authority (ECF No. 118). This Court has jurisdiction pursuant to 42 U.S.C. § 1332(a). Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument in accordance with Rule 78(b), for the reasons set forth below and for good cause shown, Cencora's Motion to Dismiss is **DENIED**, Cencora's Motion to Transfer Venue is **DENIED**, and the third-party action is stayed for ninety days to allow the parties to complete mediation efforts before the Honorable Layn R. Phillips, U.S.D.J. (ret.).

## I.    BACKGROUND

For the purposes of the Motion, the Court accepts the factual allegations in the Third-Party Complaint as true and draws all inferences in the light most favorable to Merck. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*,

---

[1] Merck's Notice of Supplemental Authority pertained to a Report and Recommendation recently entered in a related action venued in the Eastern District of Virginia (*see* ECF No. 116 (citing *FWK Holdings, LLC v. Merck & Co.*, Civ. A. No. 18-023, 2025 WL 2435909, at *1 (E.D. Va. Aug. 4, 2025), *report and recommendation adopted*, Civ. A. No. 18-023, 2025 WL 2432609 (E.D. Va. Aug. 22, 2025)).) Cencora's Notice of Supplemental Authority pertained to an Order recently entered in a related action venued in the District Court of Minnesota. (*See* ECF No. 144 (citing *United HealthCare Servs., Inc. v. Merck & Co.*, Civ. A. No. 20-1909, 2025 WL 3442799 (D. Minn. Dec. 1, 2025)).)

114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The factual and procedural backgrounds of this matter are well-known to the parties and were previously recounted in depth by the courts in prior opinions. *See, e.g.*, *Humana Inc. v. Merck & Co.*, Civ. A. No. 23-23023, 2025 WL 2538859 (D.N.J. Sept. 4, 2025); *FWK Holdings, LLC v. Merck & Co.*, Civ. A. No. 18-023, 2025 WL 2435909 (E.D. Va. Aug. 4, 2025), *report and recommendation adopted*, Civ. A. No. 18-023, 2025 WL 2432609 (E.D. Va. Aug. 22, 2025); *United HealthCare Servs., Inc. v. Merck & Co.*, Civ. A. No. 20-1909, 2025 WL 3442799 (D. Minn. Dec. 1, 2025). Accordingly, the Court will recount only the factual background and procedural history associated with the Motion. Generally, this action concerns Merck's alleged monopolization scheme relating to two of its prescription cholesterol-lowering drugs, Zetia and Vytorin.

### A.    The Parties

Merck & Co., Inc. ("Merck & Co.") is a corporation organized under the laws of New Jersey. (ECF No. 61 ¶ 14.) Merck Sharp & Dohme Corp. is a subsidiary of Merck & Co. organized under the laws of New Jersey and the assignee of patents relevant to this matter. (*Id.* ¶ 15.) MSP Singapore Co. LLC is also a subsidiary of Merck & Co., Inc. and formerly the exclusive licensee of the relevant patents. (*Id.* ¶ 21.) Schering-Plough was also a corporation organized under the laws of New Jersey, as was Schering, a wholly owned subsidiary of Schering-Plough and the original assignee of the relevant patents. (*Id.* ¶¶ 16–17.) Merck & Co. acquired and merged into Schering-Plough in 2009, thereafter changing its name to Merck & Co., Inc., and the company originally known as Merck & Co., Inc. became Merck Sharp & Dohme Corp. (*Id.* ¶ 18.)

AmerisourceBergen Corp. is a corporation organized under the laws of Delaware. (ECF No. 68 ¶ 10.) AmerisourceBergen Drug Corp. ("ABDC") is a subsidiary of Amerisource Bergen Corp. organized under the laws of Delaware. (*Id.* ¶ 9.) ABDC is a drug wholesaler, which purchased Zetia, Vytorin, or generic equivalents directly from Merck. (*See id.* ¶ 27; *see also* ECF No. 61 ¶ 12.)

Plaintiff Humana Incorporated ("Humana") is a corporation organized under the laws of Delaware. (ECF No. 61 ¶ 9.) Humana provides healthcare related services, including "insuring risk for prescription drug costs for more than 8 million members in all 50 States, the District of Columbia, and Puerto Rico." (*Id.*) When a Humana member fills a prescription for Zetia, Vytorin, or generic equivalents at a pharmacy, Humana pays a large share of the cost; for example, Humana has paid hundreds of millions of dollars to pharmacies for prescriptions for Zetia, Vytorin, and generic equivalents dispensed to Humana members. (*Id.* ¶ 10.) Humana has also spent millions of dollars on both Zetia and Vytorin dispensed by its own mail-order pharmacy, Humana Pharmacy, Inc. ("HPI"), as well as in retail pharmacy locations. (*Id.* ¶ 11.) HPI purchases Zetia, Vytorin, and other drugs relevant to this action from distributors like ABDC. (*Id.* ¶ 12.)

On May 6, 2022, Humana, HPI, and ABDC entered into an agreement assigning ABDC's rights to assert claims against Merck arising out of or relating to ABDC's purchases of Zetia and Vytorin, which were later resold to HPI from 2011 to present to Humana. (*Id.*) It is out of this agreement Humana's federal antitrust claims arise in the underlying action. (*Id.* ¶ 13.)

### B.    Multi-District Litigation & Settlement Agreement

On September 22, 2021, Humana filed its initial Complaint against Merck and Glenmark Pharmaceuticals ("Glenmark") regarding an alleged reverse-payment agreement between the parties to delay the entry of generic competition to Zetia (ECF No. 1), which was subsequently

transferred to the Eastern District of Virginia and consolidated in an ongoing multi-district antitrust litigation (the "MDL"), *In re Zetia (Ezetimibe) Antitrust Litig.*, Civ. A. No. 18-2836 (ECF Nos. 5, 6). Both Humana and Cencora were plaintiffs in the MDL and were divided into one of four distinct groups: "Direct Purchaser Plaintiffs," "Retailer Plaintiffs," "End Payor Plaintiffs," and "Insurer Plaintiffs." (*See* ECF No. 85-1.) Humana was divided into the "Insurer Plaintiff" group, and Cencora was divided into the "Direct Purchaser Plaintiff" group. (*See* ECF No. 85-1.)

On May 18, 2023, Merck and Glenmark entered into a settlement agreement with the Direct Purchase Plaintiffs only, including Cencora (the "Settlement Agreement" or "Agreement"). (*See generally* ECF No. 85-1.) The Settlement Agreement "fully, finally, and forever resolve[d], compromise[d], discharge[d], and settle[d] the claims of the Direct Purchaser Plaintiffs, *including any successors-in-interest or assignees thereof* (but not including the Retailer Plaintiffs . . . ) in the [MDL], subject to the terms and conditions set forth herein." (ECF No. 85-1 (emphasis added).) Relevant to the Motion, the Settlement Agreement includes the following provisions:

> 8. Direct Purchaser Plaintiffs represent and warrant that they have not assigned or transferred to any person or entity any claim or right to recover for any claim or potential claim that otherwise would be released under this Agreement (other than the claims that have already been asserted against Defendants by the Retailer Plaintiffs). If a party subsequently asserts against Defendants a claim assigned by a Direct Purchaser Plaintiff other than those described in the prior sentence, that Direct Purchaser Plaintiff shall defend and indemnify Defendants with respect to any liability, damages, costs and fees arising out of such action or proceeding.
>
> . . . .
>
> 16. Each of the parties hereto participated materially in the drafting of this Agreement. None of the parties hereto shall be considered the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof. If any disputes arise out of the proper interpretation

of this Agreement, said disputes are to be mediated on an expedited basis and decided in the first instance by Judge Layn R. Phillips.

17. Subject to the foregoing paragraph 16, Defendants and Direct Purchaser Plaintiffs hereby irrevocably submit to the jurisdiction of the United States District Court for the Eastern District of Virginia with respect to any suit, action, proceeding seeking to enforce the terms of this Agreement, including any appeal from a decision by Judge Phillips. In addition, nothing herein shall prohibit or restrict the assertion and enforcement of this Agreement as a defense to a claim in the forum in which such claim is brought. This Agreement shall be governed by federal common law, without regard to its principles of conflicts of laws.

(ECF No. 85-1 ¶¶ 8, 16–17.) Merck and Glenmark, however, ultimately failed to settle the MDL with the Insurer Plaintiffs, including Humana. As a result, this action was transferred back to this Court on December 12, 2023. (ECF Nos. 7, 8.)

### C.    Underlying Action & Third-Party Action

On January 29, 2025, Humana filed the Third Amended Complaint against Merck, alleging federal antitrust claims based on the assignment of rights between ABDC and Humana. (ECF No. 61.) In response, Merck filed the Third-Party Complaint against Cencora for indemnification and declaratory judgment pursuant to the terms of the Settlement Agreement on March 24, 2025 (ECF No. 68).

On June 23, 2025, Cencora filed this Motion. (*See generally* ECF Nos. 83, 84, 85.) Specifically, Cencora moves to transfer the action to the Eastern District of Virginia pursuant to Paragraph 17 of the Settlement Agreement, *i.e.*, the forum-selection clause, which requires the parties to "irrevocably submit to the jurisdiction of the United States District Court for the Eastern District of Virginia with respect to any suit, action, proceeding seeking to enforce the terms of this Agreement." (ECF No. 84 at 13–19; *accord* ECF No. 85-1 ¶ 17.) Alternatively, Cencora moves for dismissal pursuant to Paragraph 16, *i.e.*, the mediation clause, as Merck failed to satisfy the

condition precedent of mediating the matter prior to filing the Third-Party Complaint.[2] (ECF No. 84 at 7–13; ECF No. 85-1 ¶ 16.)

On July 7, 2025, Merck filed an Opposition, arguing the forum selection clause is a permissive clause, which does not require the matter be transferred to the Eastern District of Virginia (ECF No. 87 at 15–22); the mediation clause does not require pre-suit mediation as a condition precedent to the filing of the Third-Party Complaint (ECF No. 87 at 11–15); and, if mediation was in fact a condition precent, Cencora waived same by filing a motion to enforce in the Eastern District of Virginia (ECF No. 87 at 9–11). On July 14, 2025, Cencora filed its Reply. (ECF No. 95.)

### D.    Related Litigations

On March 24, 2025, Merck similarly filed a third-party claim for indemnification and declaratory judgment against Direct Purchaser Plaintiff Cardinal Health in a litigation pending in the District of Minnesota (the "Minnesota Litigation"). *United Healthcare Servs.*, 2025 WL 3442799, *2; *accord FWK Holdings*, 2025 WL 2435909, at *3. In response, Cardinal Health filed a motion to dismiss or, alternatively, to stay the Minnesota Litigation, in part, pursuant to the alleged mediation clause. *United Healthcare Servs.*, 2025 WL 3442799, at *2. Cencora and Cardinal Health also filed a motion to enforce the forum-selection clause in the Eastern District of Virginia. *FWK Holdings*, 2025 WL 2435909, at *3.

---

[2] The Motion specifically requests the Court to dismiss the third-party action pursuant to Rule 12(b)(6) and, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a). However, "[w]here district courts are presented with both a motion to dismiss and a motion to transfer venue, they commonly address the venue motion first, and, where transfer is appropriate, leave the motion to dismiss to be decided by the transferee court." *Schweitzer v. Nevels*, 669 F. Supp. 3d 242, 246–47 (S.D.N.Y. 2023) (internal citations omitted) (quoting *King v. Aramark Servs., Inc.*, Civ. A. No. 19-077, 2019 WL 3428833, at *2 (W.D.N.Y. July 30, 2019)).

On August 4, 2025, the Honorable Douglas E. Miller, U.S.M.J., entered a Report and Recommendation declining the motion to enforce. *Id.* at \*8. Importantly, Judge Miller held Paragraph 16 of the Settlement Agreement is a passive forum-selection clause, which does not require disputes arising under the Settlement Agreement to be transferred to the Eastern District of Virginia. *Id.* In support, Judge Miller noted "[n]o judicial officer of this court was involved in negotiating, consummating, or documenting the parties' settlement. Although Magistrate Judges here frequently assist parties in reaching negotiated resolutions, here the parties relied on a private mediator. . . . [T]he court had no role in the [Settlement Agreement] . . . ." *Id.* The Report and Recommendation was adopted in full on August 22, 2025. *FWK Holdings*, 2025 WL 2432609.

On December 1, 2025, the Honorable David S. Doty, U.S.D.J., entered an order denying Cardinal Health's motion to dismiss but granting its motion to stay the Minnesota Litigation. *United Healthcare Servs.*, 2025 WL 3442799, at \*3. In relevant part, Judge Doty did not find the mediation clause to be a condition precedent to the filing of the Minnesota Litigation, but rather held the determination of same should be made by Judge Phillips pursuant to the terms of the mediation clause. *United Healthcare Servs.*, 2025 WL 3442799, at \*3 ("Whether mediation is a necessary precursor to resolution by Judge Phillips is yet another question of interpretation.").

## II.  LEGAL STANDARD

### A.  28 U.S.C. § 1404(a)

"A federal district court may transfer a civil action to a different venue under 28 U.S.C. § 1406(a) ('Section 1406') or 28 U.S.C. § 1404(a) ('Section 1404')." *Bonavito v. President & Fellows of Harvard Coll.*, Civ. A. No. 20-14657, 2021 WL 2722578, at \*5 (D.N.J. June 30, 2021). "To determine which provision applies, the court first ascertains whether venue is proper in the original forum." *Adams, Nash & Haskell, Inc. v. United States*, Civ. A. No. 19-3529, 2020 WL

1305620, at *1 (D.N.J. Mar. 19, 2020) (citing *Lafferty v. St. Riel*, 495 F.3d 72, 78 (3d Cir. 2007)). "Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "Section 1406, on the other hand, applies where the original venue is improper and provides for either transfer or dismissal of the case." *Id.*

Section 1404 states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). "[T]he burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879.

The court must consider three factors when determining whether to grant a transfer under Section 1404: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a)). These factors are not exclusive and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527; *see also Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) ("[T]he purpose of . . . [Section 1404] is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'" (internal quotation marks omitted)). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879–80.

The private interests a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879). The public interests a court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* (citing *Jumara*, 55 F.3d at 879–80).

"The calculus changes, however, when the parties' contract contains a [mandatory] forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)); *see also Dawes v. Publish Am. LLLP*, 563 F. App'x 117, 118 (3d Cir. 2014) (defining a mandatory forum-selection clause as "dictat[ing] an exclusive forum for litigation under the contract" and a permissive clause as "authoriz[ing] jurisdiction in a designated forum but . . . not prohibit[ing] litigation elsewhere" (quoting *Global Satellite Coomc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004)); *Wall v. Corona Cap., LLC*, 756 F. App'x 188, 191–92 (3d Cir. 2018) (declining to apply these "calculus changes" when the parties' contract merely contained a permissive forum-selection clause). "First, the plaintiff's choice of forum merits no weight." *Atl. Marine Const.*, 571 U.S. at 63. Second, the court "deem[s] the private-interest factors to weigh entirely in favor of the preselected forum" and

"should not consider arguments about the parties' private interests." *Id.* at 64. Therefore, only the public interests may be considered. *Id.* Third, the burden of establishing transfer to the forum specified in the forum-selection clause rests with the plaintiff. *Id.* at 63–64. As such, "[w]hen the parties have agreed to a valid forum-selection clause, a district court [will] ordinarily transfer the case to the forum specified in that clause." *Id.* at 62; *accord Fin. Res. Fed. Credit Union v. Alloya Corp. Fed. Credit Union*, Civ. A. No. 20-6180, 2021 WL 268176, at *3 (D.N.J. Jan. 27, 2021).

### B.  Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This

"plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court

may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.   DECISION

Cencora argues the Third-Party Complaint should either be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a) (ECF No. 83 at 13–19) or dismissed pursuant to Rule 12(b)(6) (*id.* at 8–13). Both arguments are based on the terms of the Settlement Agreement, which contains a choice-of-law provision providing the agreement "shall be governed by federal common law, without regard to its principles of conflicts of laws." (ECF No. 85-1 ¶ 17.) "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005); *see also Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."); *Homa v. Am. Express Co.*, 558 F. 3d 225, 227 (3d Cir. 2009) ("In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state.").

Here, the Third-Party Complaint is based on diversity jurisdiction. (*See* ECF No. 68 ¶ 12.) Therefore, the Court applies New Jersey choice of law rules in deciding whether the Settlement

Agreements' choice of law clause is enforceable. Pursuant to New Jersey law, "effect [is generally given] to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Both parties frame their arguments using federal common law precedents, however, the Court declines to consider whether the choice-of-law provision conflicts with New Jersey public policy. *See, e.g.*, *Schaffner v. Monsanto Corp.*, 113 F.4th 364, 377 n.6 (3d Cir. 2024); *see also Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316 (3d Cir. 2014) (holding while "litigants may not waive issues that go to the power of the courts to hear a case," "choice-of-law questions do not go to the court's jurisdiction"). Therefore, the Court will enforce the choice-of-law clause and apply federal common law contract principles to the interpretation and enforcement of the Settlement Agreement.

"The paramount goal of contract interpretation is to determine the intent of the parties." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 75–77 (3d Cir. 2011) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009)). To determine same, courts are to consider "the intent a reasonable person would apprehend in considering the parties' behavior" and "not the inner, subjective intent of the parties." *Id.* (quoting *Am. Eagle*, 584 F.3d at 582); *see also Mellon Bank N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980) ("[C]ourts must eschew the ideal of ascertaining the parties' subjective intent and instead bind parties by the objective manifestations of their intent."). "The strongest objective manifestation of intent is the language of the contract," which "clearly manifest the parties' intent if they are capable of only one objectively reasonable interpretation." *Baldwin*, 636 F.3d at 76. If, however, the language of the contract is ambiguous—*i.e.*, "the words of the contract are capable of more than one objectively

14

reasonable interpretation"—then the court may consider extrinsic evidence to determine the intent of the parties. *Id.* Such extrinsic evidence may include "the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." *Id.* (quoting *In re New Valley Corp.*, 89 F.3d 143, 149 (3d Cir. 1996)).

### A.    28 U.S.C. § 1404(a)

First, Cencora argues the Third-Party Complaint should be transferred to the Eastern District of Virginia pursuant to Section 1404. (ECF No. 83 at 13–19.) Specifically, Cencora claims Paragraph 17 of the Settlement Agreement is a mandatory forum-selection clause requiring the parties to litigate claims arising from same in the Eastern District of Virginia (ECF No. 84 at 11–13; ECF No. 95 at 6–9); alternatively, Cencora argues the private and public interest factors weigh in favor of transferring (ECF No. 84 at 13–19; ECF No. 95 at 9–10). In response, Merck argues Paragraph 17 is a permissive forum-selection clause (*see* ECF No. 87 at 17–22) and Cencora has failed to bear its burden to establish the need for transfer under Section 1404 (*see* ECF No. 87 at 22–37).

In relevant part, Paragraph 17 provides, "Defendants and Direct Purchaser Plaintiffs hereby irrevocably submit to the jurisdiction of . . . the Eastern District of Virginia with respect to any suit, action, proceeding seeking to enforce the terms of this Agreement." (ECF No. 85-1 ¶ 17.) The term "hereby irrevocably submit," however, does not dictate an exclusive forum for litigation prohibiting litigation elsewhere. *Dawes*, 563 F. App'x at 118; *see also Wall*, 221 F. Supp. 3d at 658, *aff'd*, 756 F. App'x 188 ("A mandatory forum selection clause provides venue is proper only in the identified forum. A permissive forum selection clause authorizes venue in the selected forum." (footnote omitted)). Therefore, this Court finds Paragraph 17 is a permissive forum-selection clause, which does not change the "calculus" of the Section 1404 analysis.

15

Accordingly, Cencora bears the burden to establish "the private and public balancing factors outweigh [Merck's] choice of forum . . . more than merely 'tipp[ing]' in favor of [transfer]." *Networld Communs., Corp. v. Croat. Airlines, D.D.*, Civ. A. No. 13-4770, 2014 WL 4724625, at *5 (D.N.J. Sept. 23, 2014) (quoting *Koger, Inc. v. O'Donnell*, Civ. A. No. 07-3091, 2007 WL 3232586, at *3 (D.N.J. Oct. 31, 2007)); *see also Ethicon, Inc. v. Randall*, Civ. A. No. 20-13524, 2021 WL 2206106, at *10 (D.N.J. May 28, 2021) ("[U]nder a traditional [Section] 1404[] analysis, the plaintiff's choice of forum should seldom be disturbed." (quoting *ADP, LLC v. Lynch*, Civ. A. No. 16-1111, 2016 WL 3574328, at *6 (D.N.J. June 30, 2016)).

### 1.    The District of New Jersey is a Proper Venue

"In deciding a motion to transfer under [Section] 1404, the court must first determine whether the alternative forum is a proper venue, *i.e.*, a district wherein the action 'might have been brought.'" *Jacobs v. Cider Mill Farms*, Civ. A. No. 99-2832, 1999 WL 1418878, at *2 (D.N.J. Oct. 25, 1999). A venue is proper if it is: (1) "a judicial district where any defendant resides, if all defendants reside in the same State"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

The district of New Jersey is a district in which a substantial part of the events giving rise to the Third-Party Complaint occurred—*i.e.*, it is the district in which the underlying action was filed giving rise to the alleged obligation to indemnify. "In an action sounding in contract, the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Ferratex, Inc. v.*

*U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 438 (D.N.J. 2015); *accord Ethicon*, 2021 WL 2206106, at *12.

Here, the record does not establish where the Settlement Agreement was specifically negotiated or executed. However, the record indicates the Settlement Agreement was signed electronically by counsel on behalf of Merck, Glenmark, and the Direct Purchaser Plaintiffs. (*See* ECF No. 85-1 at 14–17.) Counsel identified their respective offices, which included New York, New York; Boston, Massachusetts; Chicago, Illinois; Philadelphia, Pennsylvania; and Little Rock, Arkansas. (*See id.*) No counsel identified their office as being located within the Eastern District of Virginia. (*See id.*) Although it is possible the representatives personally traveled to the Eastern District of Virginia to negotiate the terms of the Settlement Agreement and/or to execute the agreement virtually, the Court may not assume same. *See Stalwart Cap., LLC v. Warren St. Partners, LLC*, Civ. A. No. 11-5249, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012) ("In-person meetings can be substantial events, but electronic and telephonic negotiations between two districts do not necessarily create a substantial event."); *see, e.g., CLP Packaging Sols., Inc. v. Sports Pouch Beverage Co.*, Civ. A. No. 07-1532, 2008 WL 2095774, at *3 (D.N.J. May 16, 2008) (finding no venue in New Jersey where email and telephone negotiations occurred in New Jersey and Pennsylvania and face-to-face meetings occurred in California, Nevada and Florida); *but see Whipstock Nat. Gas Servs., LLC v. Trans Energy, Inc.*, Civ. A. No. 08-1084, 2008 WL 4287158, at *4 (W.D. Pa. Sept. 17, 2008) ("In a case where signatures occur in two different locations, the 'place of the contracting' is where the 'last act to bring the agreement into legal effect' was performed." (citing *Frankel v. Johns-Manville Corp.*, 257 F.2d 508, 510 (3d Cir. 1958))).

In contrast, a contractual indemnification obligation is to be performed in the state in which an underlying lawsuit is filed, not in the state in which the agreement to indemnify was executed.

17

*See e.g.*, *Manship v. Stein*, Civ. A. No. 21-10389, 2022 WL 203247, at *8 (D.N.J. Jan. 24, 2022), *aff'd*, Civ. A. No. 24-1383, 2024 WL 4986936 (3d Cir. Dec. 5, 2024); *Greyhound Lines, Inc. v. W. Trails Charters & Tours LLC*, Civ. A. No. 23-2769-B, 2024 WL 3528649, at *4 (N.D. Tex. July 24, 2024) (determining a duty to defend can only be performed in the state in which an underlying lawsuit was filed). Therefore, because the underlying lawsuit, which allegedly triggered Cencora's contractual indemnification obligation, was filed within New Jersey, the operative facts giving rise to the Third-Party Complaint arose in New Jersey. *See Manship*, 2022 WL 203247 ("Because a continuing [obligation to indemnify] had been established, [the defendant] should have anticipated being 'haled into court' in New Jersey, or any other state [the] [p]laintiffs ultimately chose to headquarter in."). Accordingly, the District of New Jersey is a proper venue.

### 2.    Private Interests

Cencora argues the private interest factors weigh in favor of transfer. (*See generally* ECF No. 84 at 16–18.) Specifically, Cencora claims the first factor (plaintiff's preference) disfavors transfer; the second factor (defendant's preference) favors transfer; the third factor (where the claim arose) favors transfer; and the remaining three factors (convenience of the parties, witnesses, and records) favor neither. (ECF No. 84 at 16–17.)

First, the factor for where the claim arose disfavors transfer. "As a general rule, the preferred forum is that which is the center of gravity of the accused activity." *Karimi v. Deutsche Bank Aktiengesellschaft*, Civ. A. No. 20-8978, 2022 WL 1001566, at *4 (D.N.J. Mar. 31, 2022) (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998)). "The center of gravity analysis is a fact sensitive inquiry that seeks to identify the forum in which the operative facts giving rise to the litigation occurred." *Allied Old English, Inc. v. Uwajimaya,*

*Inc.*, Civ. A. No. 11-1239, 2012 WL 3564172, at *4 (D.N.J. Aug. 16, 2012) (quoting *Travelodge Hotels, Inc. v. Perry Developers, Inc.*, Civ. A. No. 11-1464, 2011 WL 5869602, at *5 (D.N.J. Nov. 22, 2011)). As discussed above, *see supra* Section III.B.1, the operative facts giving rise to the Third-Party Complaint arose in New Jersey and, as such, the District of New Jersey is the preferred forum for same. Accordingly, the third factor disfavors transfer.

Second, the factors for the plaintiff's and defendant's respective choices of forum disfavors a transfer. "Generally, unless the defendant can show that the inconvenience to the parties strongly favors another forum, plaintiff's choice of forum should prevail." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 219 (D.N.J. 2020) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). However, "[if] the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference." *Ethicon*, 2021 WL 2206106, at *12 (quoting *Deputy Synthes*, 2013 WL 5816328, at *7). In such circumstances, the defendant's choice may be accorded greater deference. *Virag, S.R.L. v. Sony Comput. Ent. Am., LLC*, Civ. A. No. 2015 WL 1469745, 2015 WL 1469745, at *6 (D.N.J. 2015) ("[B]ecause less deference is afforded to [p]laintiff's choice of forum, [d]efendant's choice of forum should be given more weight.").

Indeed, the operative facts giving rise to the Third-Party Complaint arose in New Jersey. Accordingly, although the first factor disfavors and the second factor favors transfer, greater weight is accorded to Merck's choice—the District of New Jersey—and less weight is accorded to Cencora's choice—the Eastern District of Virginia.

Third, the convenience factors disfavor transfer. Notably, Cencora does not argue these factors favor transfer but rather claims the facts are neutral. (ECF No. 84 at 16–17.) However, the Third-Party Complaint states Merck's principal place of business is located in New Jersey, whereas Cencora's is located in Pennsylvania (ECF No. 68 at 5–11), which Cencora has not

19

denied. Therefore, there is no question the District of New Jersey is a venue more convenient for Merck. In contrast, the record does not suggest the Eastern District of Virginia would be more convenient for Cencora than this district (*see* ECF No. 84 at 17 ("[T]he District of New Jersey is no more convenient than the Eastern District of Virginia.")), and "any alleged inconvenience [to] [Cencora] is minimized by the geographical proximity between [Pennsylvania] and New Jersey, and the parties' ability (and past practice) to utilize remote tools to conduct discovery and litigate." *Ethicon*, 2021 WL 2206106, at *13. Accordingly, the fourth, fifth, and sixth factors disfavor transfer.

In summary: (1) the factor regarding where the claim arose disfavors transfer; (2) the factor for the plaintiff's choice of forum, which is entitled to significantly deference, disfavors transfer; (3) the factor for defendant's choice of forum, which is given less weight here, favors transfer; and (4) the other three factors disfavor transfer.

### 3.    Public Interests

Cencora argues the public interest factors weigh in favor of transfer. (*See generally* ECF No. 84 at 18–19.) Specifically, Cencora claims the second factor (practical considerations) favors transfer; the third factor (court congestion) favors transfer; and the remaining four factors (enforceability, local interests, public policies, familiarity) favor neither. (*Id.*)

First, the factor for the enforceability of the judgment is neutral. "[T]he public interest in the enforceability of the judgment is not concerned with the convenience with which the parties may obtain a judgment; rather, this factor concerns whether a judgment is capable of being enforced at all." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 406 n.10 (3d Cir. 2017) (citing *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1225 n.3 (3d Cir. 1995)). "[I]t is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered

Case 2:23-cv-23023-BRM-LDW    Document 153    Filed 01/14/26    Page 21 of 30 PageID: 2577

by one federal forum or the other." *Id.* at 410 (citing 1 James Moore et al., *Moore's Manual: Federal Practice and Procedure*, § 7.81[3][b] (2017)). Therefore, "[e]nforceability of the judgment does not favor either forum because the ultimate judgment will be enforceable in both states." *Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, Civ. A. No. 08-2158, 2008 WL 4755350, at *8 (D.N.J. Oct. 29, 2008) (citing *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 559 (D.N.J. 2008)).

Second, the factor for practical considerations that could make the trial easy, expeditious, or inexpensive disfavors transfer. "One practical consideration that supports transfer is efficiency." *Metro. Life Ins. Co. v. Bank One, N.A.*, Civ. A. No. 03-2784, 2012 WL 4464026, at *7 (D.N.J. Sept. 25, 2012). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404[] was designed to prevent." *Id.* (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Although Cencora claims the second public factor favors transfer, it makes no argument as to any practical considerations in support of same other than claiming the Eastern District of Virginia is less congested than the District of New Jersey (ECF No. 84 at 18), which is reviewed under the third public factor. In contrast, the underlying action is presently pending in this District, which involves the same facts as those alleged in this litigation. Accordingly, the second factor disfavors transfer.

Third, the factor relating to administrative difficulty and court congestion favors transfer. "Regarding the administrative difficulties associated with proceeding in either District, the Court is required to evaluate this factor in light of the relative docket congestion of the fora." *Hytera Communs. Corp. v. Motorola Sols., Inc.*, Civ. A. No. 17-12445, 2018 WL 7108018, at *11 (D.N.J. Dec. 6, 2018). To demonstrate congestion, a moving party will typically cite to management

statistics demonstrating the difference in congestion between the two districts. *See, e.g.*, *Ethicon, Inc. v. Randall*, Civ. A. No. 20-13524, 2021 WL 2206106, at *14–18 (D.N.J. May 28, 2021) (relying on median time between filing and disposition); *Tu v. C.H. Robinson Worldwide, Inc.*, Civ. A. No. 19-16561, 2020 WL 3496930, at *5 (D.N.J. June 29, 2020) (relying on judicial emergencies); *Metro. Life Ins. Co. v. Bank One, N.A.*, Civ. A. No. 03-1882, 2012 WL 4464026, at *8 (D.N.J. Sept. 25, 2012) (relying on number of filings per judgeship). Cencora, however, fails to cite to any management statistic, or any other study, by which to comparatively demonstrate congestion in the two districts but rather relies on Eastern District of Virginia decisions entered more than fourteen years ago to suggest the Eastern District of Virginia today is less congested than the District of New Jersey. (ECF No. 84 at 18 (citing *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 998 (E.D. Va. 2011); *Original Creatine Patent Co., Ltd. v. Met-RX USA, Inc.*, 387 F.Supp. 2d 564 (E.D. Va. 2005)).) Accordingly, the third factor is neutral.

Fourth, the factor for the local interest in deciding local controversies at home disfavors transfer. As discussed above, the underlying lawsuit was filed within New Jersey and, as such, if Cencora has an obligation to indemnify Merck, such obligation will be performed in New Jersey. *See supra* Section III.B.1. Therefore, New Jersey has a strong public interest in adjudicating the dispute. *Melone v. Boeing Co.*, Civ. A. No. 07-1192, 2008 WL 877974, at *4 (D.N.J. Mar. 28, 2008) (finding "Washington ha[d] a strong local interest in this lawsuit as opposed to New Jersey," because "he alleged culpable conduct occurred in Washington"); *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, Civ. A. No. 07-273, 2007 WL 4365328, at *6 (D.N.J. Dec. 11, 2007) ("Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest."); *Ricoh*, 817 F. Supp. at 486 (citations omitted) ("Because Minnesota is the locus of the majority of alleged culpable

conduct, Minnesota has a strong public interest in adjudicating this dispute."). In contrast, the Eastern District of Virginia has held it has no interest in deciding this alleged controversy. (*See, e.g.*, ECF 98-1 at 21.) Accordingly, the fourth factor disfavors transfer.

Fifth, the public policy factor is neutral as the applicable public policies affecting the Settlement Agreement's enforceability are similar between New Jersey and Virginia.

Sixth, the factor for the trial judge's familiarity with the applicable state law weighs against transfer. "The focus of this factor is whether judges in one of the districts would have greater familiarity with the applicable state law, particularly in diversity cases." *Jumara*, 55 F.3d at 879. If the case were to be transferred to Virginia, the same New Jersey choice of law rule would apply, since a transferee court applies the choice of law principles of the transferor forum. *Ferens v. John Deere Co.*, 494 U.S. 516, 524–25 (1990). Notably, the Third-Party Complaint includes an indemnification claim, which is a state cause of action. *See Kane v. BOC Grp., Inc.*, 234 F.3d 160, 166 (3d Cir. 2000) (recognizing an indemnification claim differs from a breach of contract claim under New Jersey law); *see also Cintron v. Savit Enters.*, Civ. A. No. 07-4389, 2009 WL 971406, at *3 (D.N.J. Apr. 9, 2009) (noting an indemnification claim is generally "not cognizable under federal common law"). Therefore, as the indemnification claim is governed by state law, even if the case was transferred to Virginia, New Jersey law will still apply. Accordingly, the sixth factor disfavors transfer.

In sum: (1) the factor for practical considerations disfavors transfer; (2) the factor relating to administrative difficulty disfavors transfer; (3) the factor relating to court congestion is neutral, (3) the factor for the state's local interest disfavors transfer; (4) the factor for the trial judge's familiarity with the applicable state law weighs against transfer; and (5) the other two factors are neutral. On balance, the public interest factors weigh against transfer.

### 4.      Balancing the Above Considerations and Factors

In balancing the private interest and the public interest factors, a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Riess v. Target Corp.*, Civ. A. No. 10-737, 2010 WL 2403349, at \*2 (D.N.J. June 15, 2010) (citing *Jumara*, 55 F.3d at 883). "[T]he defendant bears the burden of persuasion and must tip the balance 'strongly' in its favor." *Id.*

Here, the private interest factors disfavor transfer and the public interest factors are neutral. Therefore, Concena has failed to meet its burden to establish why transfer is warranted under Section 1404. Accordingly, Cencora's Motion to Transfer Venue to the Eastern District of Virginia is **DENIED**.

### B.      Rule 12(b)(6)

Next, Cencora argues the Third-Party Complaint should be dismissed pursuant to Rule 12(b)(6). (ECF No. 84 at 8–13.) Specifically, Cencora argues Merck failed to mediate the matter prior to filing the Third-Party Complaint in conflict with Paragraph 16 of the Settlement Agreement, which requires "any disputes aris[ing] out of the proper interpretation of this Agreement . . . are to be mediated on an expedited basis and decided in the first instance by Judge Layn R. Phillips." (*Id.*; *accord* ECF No. 85-1 ¶ 16.) In response, Merck argues the agreement to mediate under Paragraph 16 is not a condition precedent to filing a third-party action. (ECF No. 87 at 11–15.)

Courts have frequently enforced contractual provisions requiring mediation as a condition precedent to litigation. *See, e.g.*, *Physician & Tactical Healthcare Servs., LLC v. Inova Health Care Servs.*, Civ. A. No. 20-10808, 2021 WL 1997384, at \*5 (D.N.J. May 19, 2021); *Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 585–86 (D.N.J. 2018). However,

there is a split among the courts as to whether a mediation clause is governed under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (2018), *see, e.g.*, *Westcode, Inc. v. Mitsubishi Elec. Corp.*, Civ. A. No. 15-1474, 2016 WL 3748082, at *2 (N.D.N.Y. July 11, 2016), or under general contract law principles, *see, e.g.*, *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008). At this time, "[t]he Third Circuit has yet to rule on whether FAA governs contracts with mediation clauses." *Covoro Mining Sols., LLC v. Westlake Chemicals & Vinyls, LLC*, Civ. A. No. 23-1362, 2024 WL 3181878, at *3 (D. Del. June 26, 2024). However, "the similar nature of mediation and arbitration clauses, as 'private contractual arrangements' for alternative dispute resolution, supports treating the two clauses similarly." *Id.* (quoting *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020)).

In relevant part, Paragraph 16 provides "[i]f any disputes arise out of the proper interpretation of this Agreement, said disputes are to be mediated on an expedited basis and decided in the first instance by Judge Layn R. Phillips." (ECF No. 85-1 ¶ 16.) Notably, Paragraph 16 neither identifies mediation as a "condition precedent" to initiating litigation, *see, e.g.*, *Roschmann Steel & Glass Constructions, Inc. v. Ernest Bock & Sons-Dobco Joint Venture*, Civ. A. No. 25-2848, 2025 WL 3174209, at *2 (E.D. Pa. Nov. 13, 2025) ("Claims, disputes, or other matters in controversy arising out of or related to this [s]ubcontract . . . shall be subject to mediation as a *condition precedent* to the institution of legal or equitable proceedings by either party." (emphasis added)), nor creates a condition precedent by requiring mediation to be resolved prior to initiating litigation, *see, e.g.*, *Physician & Tactical Healthcare Servs., LLC v. Inova Health Care Servs.*, Civ. A. No. 20-10808, 2021 WL 1997384, at *3 (D.N.J. May 19, 2021) ("If the dispute, claim, question, or disagreement is not resolved pursuant to such mediation procedures, each party will be entitled to seek whatever legal or equitable remedies that may be available to such party

under this [a]greement"); *Nitterhouse Concrete Prods., Inc. v. Dobco Grp., Inc.*, 305 F. Supp. 3d 580, 582 (D.N.J. 2018) ("For any claim subject to, but not resolved by mediation[,] . . . it shall be resolved either by arbitration . . . [or] decided in the Superior Court of the State of New Jersey").

A plain reading of the provision requires the parties to pursue mediation in the first instance, if, and only if, there exists a "dispute" as to the proper interpretation of the Settlement Agreement. As the Settlement Agreement fails to define the term "dispute" (*see generally* ECF No. 85-1), the Court interprets the term pursuant to its "ordinary meaning," *i.e.*, "[a] conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit," BLACK'S LAW DICTIONARY (11th ed. 2019), or "an act of disputing or arguing against; active verbal contention, controversy, debate," OXFORD ENGLISH DICTIONARY (3d ed. 2016); *see also United States v. Poulson*, 871 F.3d 261, 269 n.7 (3d Cir. 2017) ("We may refer to legal and general dictionaries to ascertain the ordinary meaning of a term."). "In short, giving the word its ordinary meaning, a 'dispute' requires *some aspect of opposition or disagreement*." *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 246 (3d Cir. 2025) (emphasis added). Therefore, to establish the mediation clause was triggered prior to the filing of the Third-Party Complaint, Cencora is required to demonstrate there was a "dispute" between the parties as to the terms of the Settlement Agreement prior to same.

Here, Cencora claims the "Third-Party Complaint arise[s] out of and relate[s] to a dispute arising out [of] the interpretation of the Settlement Agreement." (ECF No. 84 at 9.) Importantly, Cencora does not claim there existed an "interpretive issue" requiring mediation prior to the filing of the Third-Party Complaint, but rather argues the filing of the Third-Party Complaint itself evidences the existence of a dispute requiring mediation. (*See, e.g.*, ECF No. 95 at 5–6.)

The Third-Party Complaint alleges two causes of action: indemnification and declaratory relief. (ECF No. 68.) Both claims accrue "when the plaintiff recovers a judgment against [the defendant]." *Est. of Hennis v. Balicki*, Civ. A. No. 16-4216, 2019 WL 161505, at *4 (D.N.J. Jan. 10, 2019) (quoting *Mettinger v. Globe Slicing Mach. Co., Inc.*, 709 A.2d 779, 786–87 (N.J. 1998)); *see also AMCO Ins. Co. v. AIM Leasing*, Civ. A. No. 21-2741, 2023 WL 2163914, at *3 (E.D. Pa. Feb. 21, 2023) ("Numerous courts in this Circuit have held that declaratory judgments concerning a[] [third-party defendant]'s duty to indemnify are not ripe before the [third-party plaintiff] has been held liable in the underlying action."). Pursuant to Rule 14(a), however, "[e]ven if a right to indemnification has not yet accrued under state law, a defendant [may] still bring a third-party complaint for indemnification in federal court." *Rao v. Anderson Ludgate Consulting, LLC*, Civ. A. No. 15-3126, 2017 WL 684517, at *5 n.5 (D.N.J. Feb. 21, 2017) (citing *Tormo v. Yormark*, 398 F. Supp. 1159, 1175 n.20 (D.N.J. 1975)); *see also Est. of Hennis v. Balicki*, Civ. A. No. 16-4216, 2019 WL 161505, at *4 (D.N.J. Jan. 10, 2019) ("[U]nder the entire controversy doctrine, if [indemnification] claims are known, they should be asserted in the original action." (quoting *Mettinger*, 709 A.2d at 787)).

Typically, a defendant does not file a third-party complaint for indemnification alone in the hopes of immediate equitable relief, but rather to preserve the defendant's right of indemnification following the conclusion of the underlying action. *See, e.g.*, *Nat'l Mfg. Co. v. Citizens Ins. Co. of Am.*, No. CV 13-314, 2016 WL 7491805, at *4 (D.N.J. Dec. 30, 2016); *see also, e.g., In re Alpha Ent. LLC*, Civ. A. No. 23-118, 2023 WL 4157346, at *6 (D. Conn. June 23, 2023); *Wardlow Funding, LLC v. Foasberg Laundry & Cleaners, Inc.*, Civ. A. No. 21-1519, 2023 WL 12119721, at *14 (C.D. Cal. Mar. 14, 2023); *McAllister v. St. Louis Rams, LLC*, Civ. A. No. 16-172, 2018 WL 1461665, at *1 (E.D. Mo. Mar. 23, 2018); *Gaskin v. Moore*, Civ. A. No. 10-

551, 2011 WL 2935041, at *2 (W.D. Ky. July 18, 2011); *In re Phillips Petroleum Co.*, Civ. A. No. 00-2218, 2001 WL 902595, at *1 (E.D. La. Aug. 9, 2001); *but see Excelsior Ins. Co. v. Selective Ins. Co. of Am.*, 696 F. Supp. 3d 15, 28–34 (D.N.J. 2023) (noting whereas a duty to defend accrues when the underlying action is initiated; a duty to indemnify accrues when the underlying action is concluded). Therefore, the filing of the Third-Party Complaint does not evidence the existence of a dispute between the parties as to the terms of the Settlement Agreement requiring mediation but rather entails the preservation of rights under the terms of the Settlement Agreement as written. Accordingly, absent any evidence of an actual dispute between the parties prior to the filing of the Third-Party Complaint, the mediation clause was neither triggered prior to or by the filing of the Third-Party Complaint. *See AcryliCon USA, LLC v. Silikal GmbH & Co.*, 692 F. App'x 613, 617 (11th Cir. 2017).[3]

However, the parties' submissions filed in connection with the Motion sufficiently evidences a dispute—*i.e.*, "some aspect of opposition or disagreement," *Cornelius*, 133 F.4th at 246—between the parties triggering the mediation clause as this time. It is well-settled a district court "possesses [broad] inherent discretion to stay a proceeding whenever the interests of justice mandate such action," *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 445 (D.N.J. 2014) (internal quotation marks omitted); *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d. Cir. 1976), which it may exercise *sua sponte*, *First Nonprofit Ins. Co. v. Alexander*, Civ. A. No. 09-465, 2009 WL 2256473, at *4 (E.D. Pa. July 27, 2009). This discretion is "incidental to the power

---

[3] Merck also argues Cencora waived its right to compel mediation under the mediation clause by filing the motion to enforce in the Eastern District of Virginia (ECF No. 87 at 9–11). Although the Court recognizes waiver as a valid defense to enforcement of a mediation clause, having determined the mediation clause was not triggered prior to the filing of the Motion, the Court need not determine whether the previously filed motion to compel in the Eastern District of Virginia constituted a waiver of performance of mediation not yet due.

inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *see also Washington v. CentraState Healthcare Sys., Inc.*, Civ. A. No. 10-6279, 2011 WL 1402765, at *3 (D.N.J. Apr. 13, 2011) (holding the appropriate remedy to enforce either mediation or arbitration is a stay, rather than dismissal) (citing, in part, *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir.2004)); *Blue Gentian v. Tristar Prods., Inc.*, Civ. A. No. 13-1758, 2021 WL 3561215, at *8 (D.N.J. Aug. 12, 2021) ("[G]ranting a stay to permit mediation (or to require it) will often be appropriate." (quoting *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008))). Therefore, in the interests of justice, the Court finds a stay of the third-party action is appropriate to allow the parties to complete mediation efforts before Judge Phillips pursuant to Paragraph 16 of the Settlement Agreement. (*See* ECF No. 85-1 ¶ 16 ("[S]aid disputes are to be mediated on an expedited basis . . . .").)

Based on the foregoing, Cencora's Motion to Dismiss is **DENIED**. Having determined the parties' submissions triggered Paragraph 16 of the Settlement Agreement requiring mediation before Judge Phillips as to any disputes as to the terms of the agreement, the third-party action is *sua sponte* stayed for ninety days to allow the parties to complete mediation efforts.[4]

---

[4] On July 30, 2025, Cencora filed a Moton to Stay discovery in the third-party action pending the outcome of its' Motion to Dismiss or, alternatively, to Transfer Venue. (ECF No. 109; *accord* ECF No. 132.) Merck filed an Opposition (ECF No. 119), and Cencora filed a Reply (ECF No. 121; *accord* ECF No. 133.) Having adjudicated Cencora's Motion to Dismiss or, alternatively, to Transfer Venue, Cencora's Motion to Stay discovery in the third-party action is **MOOT**.

## IV.   CONCLUSION

For the reasons set forth above, Cencora's Motion to Dismiss pursuant to Rule 12(b)(6) (ECF Nos. 83, 84, 85) is **DENIED**; Cencora's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) (ECF Nos. 83, 84, 85) is **DENIED**; and the third-party action is stayed for ninety days to allow the parties to complete mediation efforts pursuant to Paragraph 16 of the Settlement Agreement. An appropriate order follows.


**Date: January 14, 2026**                    */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**